UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ANITA MARIE J.,[1] | |
| Petitioner, | Case No. 2:20-CV-00568-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Pending before the Court for consideration is Anita Marie J.'s Petition for Review of the Respondent's denial of social security benefits, filed on December 15, 2020. (Dkt. 1.) The Court has reviewed the Petition, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner and dismiss the Petition.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On April 19, 2018, Petitioner protectively filed a Title XVI application for supplemental security income alleging disability beginning on April 13, 2018. The application was denied initially and on reconsideration.

A hearing was conducted on July 23, 2020, before Administrative Law Judge (ALJ) Stewart Stallings. After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision on August 5, 2020, finding Petitioner has not been under a disability since the date the application was filed through the date of the written decision. (AR 15-30.) The Appeals Council denied Petitioner's request for review on October 20, 2020, making the ALJ's decision final. Petitioner timely filed this action seeking judicial review of the ALJ's final decision. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's written decision, Petitioner was forty-two years of age. Petitioner completed her GED and possesses an associate degree in accounting. (AR 40.) She has no past relevant work experience. (AR 29, 56.) Petitioner claims she is unable to work due to back pain, depression, and obesity. (AR 227.)

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step

**MEMORANDUM DECISION AND ORDER - 2**

sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since April 19, 2018, the application date. (AR 18.) At step two, the ALJ found Petitioner had the following medically determinable, severe impairments: left ankle fracture status-post surgery at age fifteen with no objective residual abnormality; lumbar degenerative disc disease; morbid obesity; diabetes mellitus, type II; depressive disorder; generalized anxiety disorder; and PTSD. (AR 18.) At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). (AR 19); *see also* 20 CFR §§ 416.920(d), 416.925 and 416.926.

The ALJ next found Petitioner retained the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), with the following physical limitations: "[s]he can lift/carry 10 pound occasionally and less than 10 pounds frequently; stand/walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday." (AR 21.) The ALJ further determined Petitioner requires a sit/stand option that allows her to alternate between "sitting/standing about every 30 minutes for about five minute intervals," limited Petitioner to occasional interaction with public, co-workers, and supervisors, and imposed other environmental limitations. (AR 21.)

**MEMORANDUM DECISION AND ORDER - 3**

At step four, the ALJ found Petitioner has no past relevant work. Relying upon testimony from the vocational expert, the ALJ concluded at step five that jobs exist in significant numbers in the national economy that Petitioner can perform given her age, education, work experience, and RFC. (AR 29.) Thus, the ALJ determined Petitioner is not disabled.

## ISSUES FOR REVIEW

1.  Whether the ALJ properly evaluated Petitioner's subjective symptom testimony?

2.  Whether the ALJ properly evaluated the medical source opinion evidence?

3.  Whether the ALJ's RFC assessment is supported by substantial evidence?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court

reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

### 1.   Subjective Symptom Testimony

Petitioner challenges the ALJ's evaluation of her subjective symptom testimony, arguing the ALJ erred by dismissing her statements without providing clear and convincing reasons for doing so. (Dkt. 17.) Respondent contends the ALJ reasonably evaluated Petitioner's symptom testimony. (Dkt. 21 at 4.)

**MEMORANDUM DECISION AND ORDER - 5**

A.      **Legal Standard**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons[3] for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient

---

[3] Respondent argues the clear and convincing standard is inconsistent with the substantial evidence standard of review prescribed by Congress and the agency regulations. (Dkt. 21 at 5, n. 1.) This argument has been repeatedly raised by Respondent and rejected by the Court. There is no inconsistency between the standards. As the United States Court of Appeals for the Ninth Circuit recently explained, an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Requiring the ALJ to provide clear and convincing reasons allows the Court to meaningfully review the ALJ's decision. *Id.* In turn, the ALJ's reasons for rejecting a claimant's symptom testimony must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g).

for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p, 2016 WL 1119029, at *1-2 (March 16, 2016).[4] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record,

---

[4] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

**MEMORANDUM DECISION AND ORDER - 7**

efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file; and (4) other relevant factors listed in 20 C.F.R. § 416.929(c)(3). *See id*. at *6-7.

### B.     Petitioner's Symptom Statements and Testimony

Petitioner completed an adult function report on March 6, 2019. (AR 294-301.) In the report, Petitioner states she is unable to sit, stand, walk, and lift for long periods of time; and, she states she is unable to drive at times due to pain in her right leg from a nerve being pinched in her lower back. Petitioner reports her daily activities include getting ready for the day, eating breakfast, slowly doing small things around the house, and taking care of her grandchildren. Petitioner states she has trouble sleeping due to pain and that it takes her longer to get dressed and attend to her personal care. Petitioner shops for food once a month for about four to five hours and goes to appointments, but she does not go out alone due to a fear of falling. Petitioner stated she does not like to leave her house or deal with drama from family and friends.

At the hearing conducted on July 23, 2020, Petitioner testified that her back impairment is the primary issue keeping her from working. (AR 51.) Petitioner stated the nerve impingement in her back limits her ability to walk and move due to pain, and it is aggravated by lifting anything too heavy or walking for more than five minutes. (AR 44-46.) Petitioner testified that two or three times a week she needs to lay in bed for a couple

**MEMORANDUM DECISION AND ORDER - 8**

of hours to relax her back. (AR 52.) Petitioner stated she is 5'10" and weighed approximately 448 pounds at the time of the hearing. (AR 42-44.)

Petitioner testified that she goes grocery shopping once a month with her daughter for about three and a half hours, where she stands, walks, and uses a push cart. (AR 47-48.) Petitioner reported experiencing migraines two or three times per month that last for a couple hours, which she treats with medication as needed. (AR 48, 54.) Petitioner receives counseling and medication treatment for PTSD and depression. (AR 49-51.) She testified to leaving the house two to three times per month, but only for appointments and to have a cigarette. (AR 50-51.) At the time of the hearing, Petitioner had been the temporary legal guardian of her two grandkids for about one year. (AR 53-54.)

### C.    Analysis of ALJ's Decision

In his written decision, the ALJ considered Petitioner's subjective symptom testimony concerning her impairments, concluding that, although Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. (AR 23.)

Petitioner contends the ALJ erred by failing to provide specific reasons for rejecting her testimony concerning the severity of her back pain and inability to sustain function due to obesity. (Dkt. 17 at 6-7); (Dkt. 19 at 3.)[5] The ALJ gave the following

_____

[5] Petitioner does not specifically contest the ALJ's decision with regard to her other impairments and, thus, waived any challenge to those findings. Accordingly, the Court will discuss only the issues properly raised for review by Petitioner. *See Carmickle v. Comm'r, Soc.*

**MEMORANDUM DECISION AND ORDER - 9**

clear reasons for discrediting Petitioner's testimony about the severity of her symptoms:

1) inconsistency with the objective medical evidence; 2) Petitioner's statements are not

supported by the record and her reported activities; and 3) Petitioner stopped working for

reasons unrelated to her impairments.[6] The Court will discuss each in turn.

### 1.     Objective Medical Evidence

The ALJ discounted Petitioner's statements about her impairments, in part, stating:

"The objective medical evidence does not clearly support the frequency and severity of

the alleged symptoms and limitations." (AR 23.) When evaluating a claimant's

statements about the severity of their symptoms, the ALJ properly considers the extent to

which the claimant's statements are consistent with the objective medical evidence.

SSR16-3p.

In general, "conflicts between a [claimant's] testimony of subjective complaints

and the objective medical evidence in the record" can be "specific and substantial reasons

that undermine ... credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595,

---

*Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

[6] Petitioner contends the ALJ improperly discounted her symptom severity based on the findings of the state agency reviewing physician, Lee Lindquist. (Dkt. 17 at 4.) However, the ALJ did not rely on Dr. Lindquist's findings as a basis for discounting Petitioner's symptom statements. Rather, the ALJ's discussion of Dr. Lindquist's findings relate to his evaluation of the medical source opinions in making the RFC assessment. (AR 22.) The Court discusses below, the ALJ's evaluation of Dr. Lindquist's opinion.

**MEMORANDUM DECISION AND ORDER - 10**

600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider"). Here, the ALJ properly discounted Petitioner's symptom testimony concerning her back pain and her ability to sustain function as inconsistent with the medical evidence.

Petitioner stated she was unable to sit or stand for long periods of time, and could not walk for more than five minutes due to back pain. (AR 22.) However, the ALJ identified and discussed objective medical records reporting Petitioner had a normal gait, normal muscle strength, and no atrophy or edema of her muscles. (AR 23-23.) Further, the ALJ discussed medical records establishing Petitioner's back pain improved with treatment. (AR 23-24.) The amount and type of treatment is an appropriate factor to consider in evaluating the intensity, persistence, and limiting effects of Petitioner's symptoms. *See* SSR 16-3p. Here, Petitioner received lumbar epidural steroid injections, physical therapy, and other pain medications. (AR 24.) The ALJ cited treatment records reporting Petitioner's back pain improved with treatment, stating: her back pain was "stable" in November of 2018, she had improved pain and tolerance for activities of daily living in March of 2019, and she denied having back pain in May of 2020. (AR 23-24.)

**MEMORANDUM DECISION AND ORDER - 11**

As to her ability to sustain activity, Petitioner testified to being unable to perform even sedentary level work for a full day and for consecutive days, because she needs to lay in bed for a couple of hours to relax her back two or three times per week. (AR 51-52.) In his written decision, the ALJ considered all of Petitioner's conditions and concluded Petitioner's statements concerning the severity of her functional limitations were inconsistent with the medical records and her reported activities.

At step two, the ALJ found Petitioner's obesity to be a severe impairment, noting the most recent evidence shows a body mass index of 63.70%, indicative of obesity. (AR 18-19, 531.) The ALJ noted morbid obesity was a condition existing prior to the alleged onset of disability in the present application for benefits, but that no treating or examining physician has recommended invasive weight loss procedures for Petitioner. (AR 18.) The ALJ indicated that he considered Petitioner's obesity, singularly and in conjunction with her other impairments, in evaluating its effects on her ability to perform basic work-related activities and in formulating the residual functional capacity. (AR 19) (citing SSR 19-2p.)

The ALJ accurately described Petitioner's statements alleging she was limited in her ability to walk for more than five minutes and that she needs to lie down periodically to relax her back. The ALJ found her statements inconsistent with the objective medical records reporting Petitioner had normal gait and muscle strength. The ALJ further pointed out Petitioner worked part-time from home as a telemarketer in 2017 and 2018, despite her obesity. (AR 22, 27.) The ALJ summarized the extent to which Petitioner's

**MEMORANDUM DECISION AND ORDER - 12**

statements were inconsistent with the objective evidence, stating her "[o]besity is a long-standing condition" and "was also a severe condition in the prior denial…yet no treating source in the current record has recommended surgery for obesity." (AR 26.)[7]

The Court finds the ALJ's discussion of the inconsistency between Petitioner's statements concerning the severity of her back pain and obesity, and the relevant medical records, is a clear and convincing reason to discredit Petitioner's symptom testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill*, 12 F.3d at 918 (an ALJ must identify "what evidence suggests the complaints are not credible"). The ALJ considered Petitioner's back pain and obesity, but dismissed her assertions that her conditions caused disabling functional limitations.

The ALJ's discussion provided a detailed and accurate account of Petitioner's statements concerning the severity of her symptoms and clearly articulated the bases for concluding her statements were inconsistent with the objective medical evidence. The ALJ identified objective medical records demonstrating Petitioner had normal gait and muscle strength and that her pain had improved with treatment.

Even if the records are susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as to the credibility of Petitioner's testimony

---

[7] This is Petitioner's third application for Title XVI benefits. (AR 22.)

because it is supported by substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [Courts] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Here, substantial evidence in the record supports the ALJ's conclusion that Petitioner's symptom statements were inconsistent with the objective medical evidence. Further, the ALJ accounted for Petitioner's back pain and ability to sustain function in the RFC finding, imposing appropriate postural limitations. Most notably, the ALJ determined Petitioner must alternate between sitting and standing for five minute intervals every thirty minutes. (AR 21.)

### 2.   Petitioner's Activities

The ALJ's second reason for discrediting Petitioner's symptom testimony was that Petitioner's statements were not supported by the record and her reported activities. (AR 27.) After discussing Petitioner's testimony, the ALJ concluded the record did not support her claim that her functional limitations render her unable to work, as it shows she is "quite active." (AR 26-27.) Specifically, the ALJ noted Petitioner's testimony that she does not leave her home because she does not like to be around people is contrary to the records of her treatment providers reporting Petitioner purchased a car, drives, vacations with her daughter and grandchildren, goes grocery shopping, appeared in court, and often is the sole caretaker of her grandchildren. (AR 20, 22, 25-27.) Indeed, the ALJ concludes several times throughout the written decision that Petitioner is "active" as

evidenced by various records, contrary to her allegations of disabling functional limitations. (AR 22-28.)

The ALJ's decision is supported by substantial evidence. The type and nature of Petitioner's activities reported in the treatment records and her own statements, as discussed in the written decision, support the ALJ's conclusion that Petitioner's allegation of disabling limitations is not supported by the record. Rather, the records show Petitioner is able to care for her grandchildren, shop, vacation, and tend to her personal care. Accordingly, the Court finds this is a clear and sufficient basis for discrediting Petitioner's symptom testimony.

### 3.     Reasons for Stopping Work

The ALJ noted Petitioner stopped working, at least in part, for reasons other than her impairments. (AR 27.) The ALJ discussed Petitioner's statements to treatment providers reporting stress due to financial concerns, her desire to receive disability benefits to care for her family financially, and that she stopped working to provide care for her grandson. (AR 27, 227.) The ALJ observed that financial difficulties are not a basis for awarding benefits under the regulations. (AR 27.)

Evidence that Petitioner left work for a non-medical reason is a clear and convincing basis for discounting her symptom testimony. *See Bruton v. Massanari*, 268 F.3 824, 828 (9th Cir. 2001) (concluding that a claimant's pain complaints were not credible because he reported at the administrative hearing, and also to at least one doctor, that he left his job because he was laid off, not because he was injured). Here, Petitioner's

**MEMORANDUM DECISION AND ORDER - 15**

alleged disability onset date of April 13, 2018, coincides with the date she stopped working. (AR 227.) She filed the present application for benefits just days later, on April 19, 2018. (AR 180-182.) Petitioner stated she stopped working because of her conditions and also to be "available to help watch my grandson. The care providers for him ha[ve] a hard time remembering to take care of his daily needs. While working was unable to make sure his daily needs are being taken care of." (AR 227.) Petitioner made several statements to her treatment provider that she wanted to obtain disability benefits to provide for her family financially.

Upon this record, it was reasonable for the ALJ to consider Petitioner's reasons for stopping work when evaluating her symptom statements. Petitioner's statements to treatment providers regarding her financial concerns, desire to obtain disability benefits to provide for her family, and need to care for her grandchildren, undermine the credibility of Petitioner's claim that her impairments prevent her from working.

**2.     Medical Source Opinion Evidence**

Petitioner assigns error to the ALJ's evaluation of the medical source opinion of the state agency reviewing physician, Lee Lindquist, M.D. (Dkt. 17.) Specifically, Petitioner contends the ALJ erred in relying on Dr. Lindquist's opinion, because not all of the medical records were before Dr. Lindquist during his review. Respondent contends the ALJ properly considered the medical source opinion and explained the bases for his evaluation of the opinion evidence as required by the regulations. (Dkt. 18.)

**A.     Legal Standard**

MEMORANDUM DECISION AND ORDER - 16

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). These regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 416.920c(a). Instead, the regulations currently provide that the Commissioner "will not defer or give any specific evidentiary weight…to any medical opinion(s)… including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. § 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the

**MEMORANDUM DECISION AND ORDER - 17**

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. § 416.920c(c)(2).

The ALJ needs to address only the remaining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. § 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court will apply the revised regulations upon its review

**MEMORANDUM DECISION AND ORDER - 18**

here.

Under the applicable regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his [or her] reasoning and specifically address how he considered the supportability and consistency of the opinion, and his [or her] reasoning must be free from legal error and supported by substantial evidence." *Id*. (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court will proceed to its analysis.

### B.   Analysis

Dr. Lindquist reviewed the medical records present at the reconsideration level and, on May 24, 2019, issued a DDS explanation concluding Petitioner retained the ability to perform sedentary work. (AR 97-108.) Dr. Lindquist assigned exertional, postural, and environmental limits similar to those identified by the medical consultant at the initial stage, Robert E. Vestal, M.D., namely: occasionally lift or carry 10 pounds; frequently lift or carry less than 10 pounds; stand or walk for a total of 2 hours; sit for a

total of 6 hours in an 8-hour workday; occasional climbing, kneeling, crouching, and crawling; never climb ladders, ropes, or scaffolds; and avoid extreme cold, vibration, and hazards. (AR 104-106.)

The ALJ found the opinions of Dr. Lindquist and Dr. Vestal persuasive, stating: "[t]he state agency medical consultants reviewed the evidence of record and provided detailed analysis of it." (AR 27.) In particular, the ALJ noted Dr. Lindquist's comment that "the updated records showed the claimant completed a course of physical therapy and received discharge because she met all goals and right lower extremity symptoms resolved." (AR 27); *see also* (AR 101.) The ALJ adopted the limitations identified by Dr. Lindquist. Critically, the ALJ assigned an additional limitation that Petitioner be able to alternate between sitting and standing, based on records submitted after the state agency medical consultants conducted their reviews. (AR 27) ("[U]pdated evidence submitted after the State agency medical consultants reviewed the record supports an additional limitation of a sit/stand option as provided in the [RFC] assessment.")[8]

 The Court finds the ALJ properly evaluated Dr. Lindquist's opinion. As to consistency, the ALJ stated Dr. Lindquist's opinion assigned limitations similar to those assigned by the medical consultant at the initial stage, which Petitioner does not contest. As to supportability, the ALJ discussed Dr. Lindquist's review of Petitioner's physical therapy records showing she was discharged after meeting all goals and resolution of

---

[8] The RFC included other functional limitations not relevant to the issues raised for review.

**MEMORANDUM DECISION AND ORDER - 20**

right lower extremity symptoms. Substantial evidence in the record supports the ALJ's decision finding Dr. Lindquist's opinion persuasive.

The ALJ did not error by relying on Dr. Lindquist's opinion simply because additional medical evidence was later submitted, as Petitioner contends. The ALJ considered and discussed all of the records, including the records submitted after the state agency medical consultants conducted their review. The ALJ assigned limitations in the RFC based on the entire record. Importantly, the ALJ expressly recognized that the updated evidence submitted after Dr. Lindquist's review warranted an additional sit/stand limitation in the RFC assessment. (AR 27.) Petitioner has failed to explain how the records submitted following Dr. Lindquist's review warrant additional limitations in the RFC or otherwise impact the disability determination.[9]

Rather, Petitioner disagrees with the ALJ's assessment of the record and Petitioner's functional limitations. (Dkt. 17 at 4) (Petitioner argues the medical records filed after Dr. Lindquist's review support her symptom statements about the severity of her conditions.) However, the existence of evidence that could support a finding of disability does not show the ALJ erred in finding to the contrary. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (Even if the evidence could reasonably support

---

[9] The updated records are found in the Administrative Record at Exhibits 12F-16F. (AR 465-612). The updated records include: progress notes and a mental function report from Petitioner's psychiatric counselor, Jan Rothmeyer, dated from July 16, 2019 to July 16, 2020; treatment records from Petitioner's primary care provider dated between December 28, 2018 and June 24, 2020; and records from Petitioner's pain management treatments dated between March 11, 2019 and February 12, 2020. The ALJ addressed all of these records in his written decision. (AR 24, 26, 28.)

**MEMORANDUM DECISION AND ORDER - 21**

another conclusion, the Court must uphold the ALJ's decision if it is supported by substantial evidence, and "may not substitute [its] judgment for that of the Commissioner."); *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). Here, substantial evidence supports the ALJ's evaluation of the opinion evidence and the RFC determination.

For these reasons, the Court finds no error in the ALJ's evaluation of Dr. Lindquist's opinion. Further, the Court finds the ALJ did not error in relying on Dr. Lindquist's opinion in making the RFC determination.

### 3.    Substantial Evidence

Having found the ALJ properly evaluated Petitioner's statements, the medical opinion evidence, and the relevant medical records, the Court finds the ALJ's decision is without legal error and supported by substantial evidence. The ALJ provided a detailed "summary of the facts and conflicting clinical evidence," explained his interpretation of the record and evidence, and made the requisite findings. *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). That Petitioner views the record differently does not establish reversible error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). For these reasons, the Court will affirm the decision of the Commissioner and

dismiss the Petition for Review.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that the Commissioner's decision finding that the Petitioner

is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the

petition for review is **DISMISSED**.

DATED: March 8, 2022

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge